| | |
|---|---|
| UNITED STATES DISTRICT COURT<br>CENTRAL DISTRICT OF CALIFORNIA | PRIORITY SEND |
| CIVIL MINUTES -- GENERAL | JS - 6 |

Case No.  **CV 12-3626-JFW (PJWx)**                               Date:  August 16, 2012

Title:     Jane Doe No. 14 -v- Internet Brands, Inc., D/B/A Modelmayhem.com

**PRESENT:**

   HONORABLE JOHN F. WALTER, UNITED STATES DISTRICT JUDGE

   Shannon Reilly                                  None Present
   Courtroom Deputy                                 Court Reporter

**ATTORNEYS PRESENT FOR PLAINTIFFS:**              **ATTORNEYS PRESENT FOR DEFENDANTS:**
               None                                              None

**PROCEEDINGS (IN CHAMBERS):**     ORDER GRANTING DEFENDANT INTERNET BRANDS, INC.'S MOTION TO DISMISS PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 12(b)(6) [filed 7/3/2012; Docket No. 12];

On July 3, 2012, Defendant Internet Brands, Inc. ("Defendant") filed a Motion to Dismiss Pursuant to Federal Rules of Civil Procedure 12(b)(6). On July 30, 2012, Plaintiff Jane Doe No. 14 ("Plaintiff") filed her Opposition. On August 9, 2012, Defendant filed a Reply. Pursuant to Rule 78 of the Federal Rules of Civil Procedure and Local Rule 7-15, the Court finds that this matter is appropriate for decision without oral argument. The hearing calendared for August 20, 2012 is hereby vacated and the matter taken off calendar. After considering the moving, opposing, and reply papers and the arguments therein, the Court rules as follows:

**I.     FACTUAL AND PROCEDURAL BACKGROUND**

Defendant owns and operates a modeling industry website, modelmayhem.com, which provides a platform for professional models and those who seek a career in modeling to market their services to the modeling industry. Plaintiff alleges that, in February 2011, third parties Emerson Callum and Lavont Flanders used the website to lure Plaintiff to Miami for a modeling audition and that they then drugged and raped her, videotaped the rape, and sold the videotape as pornography.

Plaintiff alleges that Defendant knew that Callum and Flanders had used their website to lure other users to Florida, drug and rape the users, videotape the rape, and sell the videotape as pornography in the past, yet failed to warn its website's users of the scheme.

Plaintiff alleges one claim for relief against Defendant for negligence.

## II. LEGAL STANDARD

A motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims asserted in the complaint. "A Rule 12(b)(6) dismissal is proper only where there is either a 'lack of a cognizable legal theory' or 'the absence of sufficient facts alleged under a cognizable legal theory.'" *Summit Technology, Inc. v. High-Line Medical Instruments Co., Inc.*, 922 F. Supp. 299, 304 (C.D. Cal. 1996) (quoting *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1988)). However, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations and alterations omitted). "[F]actual allegations must be enough to raise a right to relief above the speculative level." *Id.*

In deciding a motion to dismiss, a court must accept as true the allegations of the complaint and must construe those allegations in the light most favorable to the nonmoving party. *See, e.g., Wyler Summit Partnership v. Turner Broadcasting System, Inc.*, 135 F.3d 658, 661 (9th Cir. 1998). "However, a court need not accept as true unreasonable inferences, unwarranted deductions of fact, or conclusory legal allegations cast in the form of factual allegations." *Summit Technology*, 922 F. Supp. at 304 (citing *Western Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981) *cert. denied*, 454 U.S. 1031 (1981)).

Where a motion to dismiss is granted, a district court must decide whether to grant leave to amend. Generally, the Ninth Circuit has a liberal policy favoring amendments and, thus, leave to amend should be freely granted. *See, e.g., DeSoto v. Yellow Freight System, Inc.*, 957 F.2d 655, 658 (9th Cir. 1992). However, a Court does not need to grant leave to amend in cases where the Court determines that permitting a plaintiff to amend would be an exercise in futility. *See, e.g., Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729, 738 (9th Cir. 1987) ("Denial of leave to amend is not an abuse of discretion where the pleadings before the court demonstrate that further amendment would be futile.").

## III. DISCUSSION

Defendant, in relevant part, moves to dismiss Plaintiff's Complaint on the grounds that her claim for negligence is barred by the Communications Decency Act ("CDA"), 47 U.S.C. § 230(c).

"Congress provided broad immunity under the CDA to Web-based service providers for all claims stemming from their publication of information created by third parties, referred to as the 'Good Samaritan' provision." *Doe v. MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008). The Good Samaritan provision provides: "No provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c)(1). "No cause of action may be brought and no liability may be imposed under any State or local law that is inconsistent with this section." 47 U.S.C. § 230(e)(3). Although the courts have construed the Good Samaritan provision broadly, "neither this subsection or any other declares a general immunity from liability deriving from third-party content." *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1100 (9th Cir. 2009). Instead, subsection (c)(1) "only protects from liability (1) a provider or user of an interactive computer service (2) whom a plaintiff seeks to treat,

under a state law cause of action, as a publisher or speaker (3) of information provided by another information content provider." *Id.* at 1100-1101.

In this case, there is no dispute that Defendant is a provider of an interactive computer service, nor is there any dispute that the "information content" was provided by another "information content provider." The only issue presented by Defendant's motion to dismiss is whether Plaintiff seeks to treat Defendant, under a state law cause of action, as a publisher or speaker.

In determining whether Plaintiff seeks to treat Defendant as a publisher or speaker, the Ninth Circuit has held:

> What matters is not the name of the cause of action -- defamation versus negligence versus intentional infliction of emotional distress -- what matters is whether the cause of action inherently requires the court to treat the defendant as the "publisher or speaker" of content provided by another. To put it another way, courts must ask whether the duty that the plaintiff alleges the defendant violated derives from the defendant's status or conduct as a "publisher or speaker." If it does, section 230(c)(1) precludes liability.

*Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1101-1102 (9th Cir. 2009). "[P]ublication involves reviewing, editing, and deciding whether to publish or to withdraw from publication third-party content." *Id.* at 1102.

Here, the Court concludes that Plaintiff seeks to treat Defendant as a publisher or speaker in her negligence claim, and thus that claim is barred by the CDA. The Fifth Circuit addressed a similar issue in *Doe v. MySpace, Inc.*, 528 F.3d 413 (5th Cir. 2008). There, a thirteen-year-old girl represented that she was eighteen years old when she created her MySpace profile. As a result, her profile was made public, and a nineteen-year-old male was able to initiate contact with her when she was fourteen. When they met in person, he sexually assaulted her. The girl and her mother filed suit, alleging, *inter alia*, that MySpace was negligent for failing to implement basic safety measures to protect minors from adult predators whom they meet on MySpace. In order to avoid the CDA bar, the plaintiffs argued that they were not attempting to treat MySpace as a "publisher." The Fifth Circuit rejected the plaintiffs argument, stating: "Their claims are barred by the CDA, notwithstanding their assertion that they only seek to hold MySpace liable for its failure to implement measures that would have prevented Julie Doe from communicating with Solis. Their allegations are merely another way of claiming that MySpace was liable for publishing the communications and they speak to MySpace's role as a publisher of online third-party-generated content." *MySpace, Inc.*, 528 F.3d at 420.

Similarly, in an almost identical case involving MySpace, the California Court of Appeal in *Doe II v. MySpace Inc.*, 175 Cal. App. 4th 561 (2009) concluded that the CDA barred the plaintiffs' claims. There, the plaintiffs also claimed that MySpace was negligent for failing to implement reasonable and basic safety measures in order to protect young children from sexual predators, such as implementing "readily available and practicable age-verification software" or setting the default security setting on plaintiffs' accounts to private. In rejecting the plaintiffs' claim that they were not seeking to treat MySpace as a publisher, the California Court of Appeal stated:

> That appellants characterize their complaint as one for failure to adopt reasonable safety measures does not avoid the immunity granted by section 230. It is undeniable that appellants seek to hold MySpace responsible for communications between the Julie Does and their assailants. At its core, appellants want MySpace to regulate what appears on its Web site. Appellants argue they do not "allege liability on account of MySpace's exercise of a publisher's traditional editorial functions, such as editing, altering, or deciding whether or not to publish certain material . . . . But that is precisely what they allege; that is, they want MySpace to ensure that sexual predators do not gain access to (i.e., communicate with) minors in its Web site. That type of activity -- to restrict or make available certain material -- is expressly covered by section 230.

*MySpace Inc.*, 175 Cal. App. 4th at 573.

Plaintiff, like the plaintiffs' in the *MySpace* cases, claims that her negligence claim is not based on Defendant's status as a publisher and is distinct from any conduct like editing, monitoring, or removing offensive content published on the internet, relying on *Lansing v. Southwest Airlines Co.*, 2012 Ill. App. (1st) 101164, __ N.E. 2d __ (Ill. App. Ct. June 8, 2012) and *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1101-1102 (9th Cir. 2009). However, in both those cases, the defendants' duty clearly did not derive from their status as publishers. In *Lansing*, for example, the Appellate Court of Illinois concluded that the plaintiff's negligent supervision claim was not barred by the CDA because the defendant's duty derived from the defendant's status as an employer and thus the defendant had a duty to supervise its employee's conduct. Similarly, in *Barnes*, the Ninth Circuit held that the CDA did not bar the plaintiff's promissory estoppel claim because it was based on a duty that derived from an enforceable promise that the defendant had breached. Here, despite Plaintiff's characterization of her claim, Plaintiff is essentially asking Defendant to advise its users of known risks associated with content provided by third parties on its website. The Court concludes that any duty Defendant has to notify its users of known risks derives solely from its status as a publisher of that content. Accordingly, Plaintiff's claim for negligence is barred by the CDA.

## IV.    CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss Pursuant to Federal Rules of Civil Procedure 12(b)(6) is **GRANTED.** Plaintiff's Complaint is **DISMISSED with prejudice.**

Although the Court recognizes that this Circuit has a liberal policy favoring amendments and that leave to amend should be freely granted, the Court is not required to grant leave to amend if the Court determines that permitting Plaintiff to amend would be an exercise in futility. *See, e.g., Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729, 738 (9th Cir. 1987) ("Denial of leave to amend is not an abuse of discretion where the pleadings before the court demonstrate that further amendment would be futile."). "Leave to amend may be denied if a court determines that allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Abagninin v. AMVAC Chemical Corp.*, 545 F.3d 733, 742 (9th Cir. 2008) (quotations and citations omitted). In this case, Plaintiff has failed to provide the Court with any facts or argument that indicate leave to amend would not be futile. *See Deutsch v. Turner Corp.*, 324 F.3d 692, 717-718 (9th Cir. 2003) (upholding denial of leave to amend on the basis of futility where the

plaintiffs proffered facts to the district court that were insufficient to support tolling and failed to offer additional facts on appeal).  Accordingly, the Court denies Plaintiff leave to amend her Complaint.

      IT IS SO ORDERED.