THE McGUIRE LAW FIRM
Kevin M. McGuire
California Bar No. 164895
themcguirelawfirm@yahoo.com
43460 Ridge Park Drive, Suite 200
Temecula, California 92590
Tel: (951) 719-8416
-and-
HERMAN LAW
3351 NW Boca Raton Boulevard
Boca Raton, Florida 33431
Jeff Herman
(Admitted *Pro Hac Vice*)
Arick Fudali
California Bar No. 296364
afudali@hermanlaw.com

Attorneys for Jane Doe No. 14

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JANE DOE NO. 14,<br><br>Plaintiff,<br>vs.<br><br>INTERNET BRANDS, INC., d/b/a MODELMAYHEM.COM,<br><br>Defendant. | CASE NO: CV 12-3626-JFW (PJWx)<br><br>**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS** |

## Introduction

This case arises from the horrific sexual assault of Plaintiff Jane Doe No. 14 ("Jane Doe"), in a rape scheme perpetrated against aspiring models marketing their modeling services on a fashion industry website, modelmayhem.com. In this

scheme, members of modelmayhem.com were lured to South Florida on the pretext of an audition for a lucrative modeling contract, drugged and then raped while being videotaped for sale as pornography. Defendant Internet Brands, Inc., owns and operates modelmayhem.com, and as alleged in the Complaint, knew of the rape scheme being perpetrated against its members. The Complaint alleges a claim of negligence under California law for failure to warn.[1]

Defendant moves to dismiss the Complaint on grounds that it did not have a duty to warn and Plaintiff cannot allege causation. These grounds fail to warrant dismissal, as California law supports a duty to warn based on the extraordinary facts of this case, where (i) Defendant knew that its modelmayhem.com members were being targeted in a particular rape scheme; (ii) it was foreseeable that its female clients using and marketing their services on the modelmayhem.com website would be lured into the scheme and then raped; (iii) Defendant was in a unique position to protect Jane Doe and other modelmayhem.com members by means of a simple warning advising them of information Defendant knew about the rape scheme, particularly the perpetrators' modus operandi; and (iv) if Jane Doe had this information, she could have taken necessary precautions to prevent serious harm. The facts of this case show that Defendant created a peril which

[1] Plaintiff brings this case pursuant to the Court's diversity jurisdiction. The parties do not dispute that California law applies to Plaintiff's negligence claim.

caused injury to Plaintiff, and that Plaintiff necessarily relied on Defendant for an appropriate warning to modelmayhem.com members given that it was the only party with knowledge of the rape scheme capable of doing so. Accordingly, the facts alleged in the Complaint demonstrate that Defendant owed a duty to Plaintiff, and that its breach of that duty was a substantial factor causing injury to Plaintiff. This sufficiently states a claim for negligence, and Defendant's Motion to Dismiss should accordingly be denied in its entirety.

## Relevant Facts Alleged in the Complaint

The Complaint alleges that Defendant Internet Brands, Inc. ("Internet Brands") operates a modeling industry website, modelmayem.com, which "provides a platform for professional models and those who seek a career in modeling to market their services to the modeling industry." (Complaint (DE1) ¶ 3). Jane Doe was an aspiring model who joined modelmayhem.com and used the website to market her modeling services. (*Id.* ¶ 7). Unbeknownst to Jane Doe, Internet Brands was aware of the activities of two individuals, Lavont Flanders and Emerson Callum, who were using modelmayhem.com as a tool and resource to lure aspiring female models like Jane Doe into a rape scheme, in which the victims were drugged and raped on videotape for sale as pornography. (*Id.* ¶ 9). In particular, Internet Brands knew of the modus operandi of Flanders and Callum, "including how modelmayhem.com had been used in the scheme and its member

victimized." (*Id.*) The Complaint alleges specifically that Internet Brands had the following knowledge:

a. Lavont Flanders and Emerson Callum would contact female modelmayhem.com members, using fake identities, disguised as talent scouts.

b. Lavont Flanders and Emerson Callum would lure female modelmayhem.com members to South Florida to participate in fake auditions for a fraudulent modeling contract opportunity.

c. Lavont Flanders and Emerson Callum would drug the female modelmayhem.com members with a date-rape drug during the fake audition.

d. Emerson Callum would then rape the unknowingly drugged women.

e. Lavont Flanders and Emerson Callum would record the rape on video camera.

f. Lavont Flanders and Emerson Callum would produce the rape videos and distribute the video on the internet, guised as consensual hardcore pornography.

(Complaint ¶ 9; see also ¶ 20).

Although Internet Brands knew that its members were being targeted in this particular scheme, it did nothing to warn members of modelmayhem.com, including Jane Doe: "At all relevant times, Internet Brands knew that Jane Doe was typical of the women who were targeted and horrifically raped in the scheme." (*Id.* ¶ 10).

Without any information concerning the danger to modelmayhem.com members of being lured to South Florida for a phony modeling contract opportunity, Jane Doe was duped in the scheme, having no reason to believe it was illegitimate. (*Id.* ¶ 11). She came to South Florida for a fake audition, where she was drugged and raped on video camera. (*Id.* ¶¶ 11-13). As a result, she has suffered severe injuries, mental anguish and pain, and loss of enjoyment of life. (*Id.* ¶ 14).

In August, 2010, prior to the rape of Jane Doe, Internet Brands brought suit against the individuals who sold it modelmayhem.com, alleging, among other things, that the sellers failed to warn Internet Brands of the potential for civil suits arising from the rape scheme. (*Id.* ¶ 19). While Internet Brands was claiming in the lawsuit that the sellers failed to warn Internet Brands in the purchase transaction, causing it potential monetary losses Internet Brands had the same knowledge and a relationship with its members marketing their modeling services by means of the modelmayhem.com website, yet did nothing to warn its female members who were left vulnerable to being horrifically drugged and raped in the Flanders and Callum scheme. (*Id.* ¶¶ 16-20).

The Complaint makes the following allegations in its negligence cause of action pertinent to duty and causation:

9. Internet Brands had actual knowledge that Lavont Flanders and Emerson Callum were contacting female modelmayhem.com members, using fake identities, disguised as talent scouts.

10. Internet Brands had actual knowledge that Flanders and Callum were luring female modelmayhem.com members to South Florida to participate in fake auditions for a fraudulent modeling contract opportunity.

11. Internet Brands had actual knowledge that Flanders and Callum were drugging the female modelmayhem.com members with a date-rape drug during the fake audition.

12. Internet Brands had actual knowledge that Callum was raping the unknowingly drugged female modelmayhem.com members.

. . .

29. With this actual knowledge, Internet Brands had a duty to make adequate disclosures and warn modelmayhem.com users of the danger presented, and inform them of the need to screen and verify the legitimacy of persons using modelmayhem.com to contact them for modeling services.

30. Internet Brands knew that Plaintiff, in using modelmayhem.com, was exposed to an unreasonable risk of harm from the foreseeable acts of sexual predators, particularly Callum and Flanders.

31. Internet Brands had superior knowledge of the scheme used by Flanders and Callum to lure and rape unsuspecting female modelmayhem.com members.

32. Internet Brands controlled modelmayhem.com and had the means and ability to warn modelmayhem.com users and protect them from a known harm.

33. Internet Brands had a duty to disclose to, or warn Plaintiff, and other modelmayhem.com users, of the dangers that were known to Defendant from Flanders and Callum using modelmayhem.com to carry out the scheme.

. . .

39. As a direct result of Internet Brands negligent breach of its duty to warn, Jane Doe was an unknowing and helpless victim to the fraudulent solicitation, drugging, and rape by Lavont Flanders and Emerson Callum.

## Points and Authorities

### I. THE ALLEGATIONS OF THE COMPLAINT SATISFY THE PLAUSIBILITY STANDARD UNDER *TWOMBLY* AND *IQBAL*

When ruling on a motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), "a judge must accept as true all of the factual allegations contained in the Complaint." *Erickson v. Pardus*, 551 U.S. 89, 94, 127 S. Ct. 2197 (2007). A complaint must "state a claim for relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955 (2007). This means that the complaint must contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937 (2009). This is not "akin to a probability requirement", but requires only that the plaintiff plead "more than a sheer possibility that a defendant has acted unlawfully." *Id.*; *see also* SRK

*Consulting, Inc. v. MMLA Psomas, Inc.*, 2009 U.S. Dist. LEXIS 70190 *11, 2009 WL 2450490 (D. Ariz.) (finding that complaint contained sufficient allegations to state a claim for purposes of duty of care arising from a special relationship); *Testo v. Bank of America, N.A.*, 2013 U.S. Dist. LEXIS 184833 *4, 2013 WL 7118111 (C.D. Cal.) (finding allegations of complaint sufficient to satisfy *Iqbal* and *Twombly*, and noting that the issue raised in motion to dismiss is "best addressed on summary judgment"). The facts plead in the Complaint in this case satisfy the *Iqbal* and *Twombly* plausibility standard, as they sufficiently support a duty to warn and causation under California law. The Motion to Dismiss should accordingly be denied.

## II. THE ALLEGATIONS OF THE COMPLAINT SUPPORT INTERNET BRANDS' DUTY TO WARN UNDER CALIFORNIA LAW

Internet Brands argues that it did not owe a duty to warn its female members of the rape scheme in which Flanders and Callum lured unsuspecting female members of modelmayhem.com. An analysis of California law, however, demonstrates that a duty to warn arose under the facts alleged in the Complaint.

### A. The Facts Alleged Satisfy the Factors to be Considered in Determining the Existence of Duty

Cal. Code §1714(a) provides that liability is imposed "for an injury occasioned to another by his or her want of ordinary care or skill in the management of his or her property or person, except so far as the latter has,

willfully or by want of ordinary care, brought the injury upon himself or herself." A determination that there is no duty is "a departure from Civil Code §1714 subdivision (a)", and is based on policy considerations. *Wylie v. Gresch*, 191 Cal. App. 3d 412, 416, 236 Cal. Rptr. 552 (1987); *see also* *Johnson v. County of Los Angeles*, 143 Cal. App. 3d 298, 307, 191 Cal. Rptr. 704 (1983) ("[d]uty is an expression of the sum total of those considerations of policy which lead the law to say that the particular plaintiff is entitled to protection") (citations, internal quotations omitted). The California Supreme Court has set forth the following policy considerations for determining whether there exists a duty in a particular case:

> We depart from 'this fundamental principle' [of §1714(a)] only upon the 'balancing of a number of considerations'; major ones 'are the foreseeability of harm to the plaintiff, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, the policy of preventing future harm, the extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach, and the availability, cost and prevalence of insurance for the risk involved.

*Tarasoff v. Regents of the University of California*, 17 Cal. 3d 425, 434, 131 Ca. Rptr. 14, 551 P. 2d 334 (1976) (quoting *Rowland v. Christian*, 69 Cal. 2d 108, 70 Cal. Rptr. 97, 443 P.2d 561 (1968)). "The question whether one owes a duty to

another must be decided on a case-by-case basis . . ." *Bastian v. County of San Luis Obispo*, 199 Cal. App. 3d 520, 530, 245 Cal. Rptr. 78 (1988). Each of these factors sets forth in *Rowland* and *Tarasoff* supports imposing a duty given the facts alleged in this case.

*Foreseeability*

Foreseeability is "[t]he most important of these considerations." *Id*. at 434-45. "As a general principle, a defendant owes a duty of care to all persons who are foreseeably endangered by his conduct, with respect to all risks which make the conduct unreasonably dangerous." *Id*. Here, Internet Brands is alleged to have had specific information concerning how Flanders and Callum lured modelmayhem.com members to be their rape victims. (Complaint ¶ 9). Indeed, it was readily predictable that Flanders and Callum would strike again to take advantage of unsuspecting modelmayhem.com members.

*Degree of Certainty that the Plaintiff Suffered Injury*

The Complaint alleges that Plaintiff was fraudulently solicited for a modeling opportunity, drugged and raped, with the rape videotaped and sold as pornography. (*Id.* ¶ 11). This caused her severe injuries, mental pain and anguish, and loss of enjoyment of life. (*Id*. ¶ 14).

*Closeness of the Connection Between the Defendant's Conduct and the Injury Suffered*

Causation is simple and direct in this case: Internet Brands failed to warn its female members by providing them with information it knew about the Flanders and Callum scheme targeting them. Because Plaintiff did not have that information, Plaintiff was lured into the trap, resulting in her rape. (*Id*. ¶¶ 28-29). This is not a case of an attenuated connection between the defendant's conduct and the plaintiff's injury involving multiple inferences or challenging a series of discretionary decisions. (See discussion *infra* §III).

*Moral Blame Attached to the Defendant's Conduct*

Internet Brands could have avoided the harm to Jane Doe with a simple warning about the Flanders/Callum scheme and failed to do so. At the same time, it used the information it had about the scheme to seek to gain monetary gain in a lawsuit against the sellers of modelmayhem.com. (Complaint ¶¶ 18-20). The moral turpitude of this contrast speaks for itself. *See Jennifer C. v. Los Angeles United School Dist.*, 168 Cal. App. 4th 1320, 1329-30, 86 Cal. Rptr. 3d 274 (2008) (analyzing each of the duty factors and finding moral blame "because defendant could have easily prevented this occurrence from happening. . .").

*Burden to the Defendant and Consequences to the Community*

The facts of this case are unique and extreme. Defendant had particular and specific knowledge of a serious danger of rape to its female members. Imposing a

duty based on these facts does not open any floodgates, as it would not impose a duty to warn of general harms that are not based on knowledge of a specific concealed danger or that could be readily gleaned or discovered without the need for a warning. *See Wylie*, 191 Cal. App. 3d at 423-24 (discussed *infra*, landlord has no general duty to warn of vicious dog in neighborhood). At the same time, based on the facts alleged here, policy supports "preventing future harm of a similar nature to a similar plaintiff." *Jennifer C.*, 168 Cal. App. 4th at 1329-30. In *Tarasoff*, the victim was murdered by the patient of a psychologist to whom he had disclosed his intention to murder the victim. 17 Cal. 3d at 429. The Court found that this gave rise to a duty to warn, particularly considering the increased interdependence of persons in society resulting from advancements in communication:

> Our current crowded and computerized society compels the interdependence of its members. In this risk-infested society we can hardly tolerate the further exposure of danger that would result from a concealed knowledge of the therapist that his patient was lethal. If the exercise of reasonable care to protect the threatened victim requires the therapist to warn the endangered party or those who can reasonably be expected to notify him, we see no sufficient societal interest that would protect and justify concealment. The containment of such risks lies in the public interest.

*Id*. at 442. Likewise, this principle applies to a website operator with knowledge that its female clients marketing themselves on its website are exposed to a particular danger.[2]

*Availability of Insurance*

There is an ample market for insurance covering general liability to businesses and organizations, which includes claims arising from sexual assault.

Based on analysis of the foregoing factors, there is no basis to reject a duty to warn that would have prevented a foreseeable harm in this case.

**B. The Facts Alleged Demonstrate a Special Relationship Supporting a Duty**

Internet Brands nonetheless contends that it had no duty in this case because Plaintiff fails to allege a "special relationship", and there is no basis under California law to find a special relationship supporting a duty to warn that is

---

[2] In the Ninth Circuit's decision in this case reversing dismissal based on the Communications Decency Act, 47 U.S.C. §230(c), and remanding to this Court, it rejected the argument that policy required a grant of immunity to internet service providers from any tort duty, characterizing Plaintiff's claim as follows:

> Jane Doe's failure to warn claim has nothing to do with Internet Brands' efforts, or lack thereof, to edit, monitor, or remove user generated content. Plaintiff's theory is that Internet Brands should be held liable, based on its knowledge of the rape scheme and its "special relationship" with users like Jane Doe, for failing to generate its own warning. Thus, liability would not discourage the core policy of section 230(c). . .

*Doe v. Internet Brands, Inc.*, 824 F. 3d 846, 852 (9th Cir. 2016).

"based solely on being in possession of information superior to another." (Defendant's Memorandum, p. 8, lines 7-8). The allegations pertaining to duty in the Complaint, however, go beyond superior knowledge and satisfy the requirements under California law for a duty based on a special relationship.

The Court in *Tarasoff* explained that the law imposes a duty to warn where the defendant is in some form of special relationship with another:

> [W]hen the avoidance of foreseeable harm requires a defendant to control the conduct of another person, or to warn of such conduct, the common law has traditionally imposed liability only if the defendant bears some special relationship to the dangerous person or to the potential victim.

17 Cal. 3d at 435; *see also* *Wallace v. City of Los Angeles*, 12 Cal. App. 4th 1385, 16 Cal. Rptr. 2d 113 (1993) (quoting special relationship test from Restatement Second of Torts §315 (1965), which states that a duty to warn may arise if "[a] special relation exists between the actor and the third person which imposes a duty on the actor to control the third person's conduct, or (b) a special relation exists between the actor and the other which gives the other a right to protection"); *accord* *Zelig v. County of Los Angeles*, 27 Cal. 4th 1112, 1129, 119 Cal. Rptr. 2d 709, 45 P. 3d 1171 (2002); *Johnson v. County of Los Angeles*, 143 Cal. App. 3d 298, 306, 191 Cal. Rptr. 704 (1983) (the law imposes a duty to warn where "the defendant stands in some *special relationship* either to the person whose conduct

needs to be controlled, or to the foreseeable victim of such conduct") (emphasis original).

The law imposes no limitation on the facts and circumstances which may give rise to a special relationship. A duty will be imposed based on a special relationship "upon those who create a foreseeable peril, not readily discoverable by endangered persons, to warn them of such potential peril." *Johnson v. State of California*, 69 Cal. 2d 782, 786, 447 P. 2d 352 (1968) (finding duty to warn foster parents by the state when it placed a 16 year old child with known violent propensities in foster home); *see also* *Res-Care, Inc. v. Roto-Rooter Services Co.*, 2011 U.S. Dist. LEXIS 85321 *30, 2011 WL 3353893 (N.D. Cal. 2011) (duty may arise "when the actor creates the peril or contributes to, increases or changes the risk which would have otherwise existed"); *Wylie*, 191 Cal. App. 3d at 422 (special relationship created "by defendant's placing plaintiffs in peril, which required the defendants to warn the particular plaintiffs of danger or to protect them from . . . intentional acts of third persons"); *Wallace*, 12 Cal. App. 4th at 1396 ("when the [defendant's] actions create a foreseeable peril to a specific foreseeable victim, a duty to warn arises when the danger is not readily discoverable by the endangered person") (emphasis omitted). "It is well established that one's general duty to exercise due care includes the duty not to place another person in a situation in which the other person is exposed to an unreasonable risk of harm through the

reasonably foreseeable conduct of a third person." *Zelig*, 27 Cal. 4th at 1128, (finding no duty on basis that state employees did not create peril where former husband shot ex-wife in courthouse).[3]

The Complaint alleges that modelmayhem.com is a modeling industry website that "provides a platform for professional models and those who seek a career in modeling to market their services to the modeling industry." (Complaint ¶ 3). Jane Doe was an "aspiring model", who "joined modelmayhem.com in an effort to further her career as a model and market her services in the modeling industry." (*Id.* ¶ 7). Jane Doe was, accordingly, a client or customer of Defendant, which provided Plaintiff with a platform to market her service. In its capacity of providing a service to aspiring models, Internet Brands learned that its modelmayhem.com website was being used as a tool by Flanders and Callum to locate, dupe and rape Internet Brands' female clients for the production of pornography. (*Id.* ¶¶ 8, 9). At the same time, the female members of modelmayhem.com continued to use the website to market their modeling services, placing them in particular danger of being lured into the rape scheme. The modelmayhem.com members form a limited population of potential victims known

---

[3] The "created peril" doctrine has alternatively been expressed as an exception to the special relationship requirement, imposing a duty in circumstances where there is not otherwise a special type of relationship between the defendant, the actor or the victim. *Bastian*, 199 Cal. App. 3d at 530 ("no special relationship need exist where the defendant created the peril which caused the plaintiff's injury").

to Internet Brands, and Internet Brands was in a unique position to warn their members of the known danger that was presented. These facts demonstrate a created peril giving rise to a special relationship. *See Engert v. Stanislaus County*, 2015 U.S. Dist. LEXIS 74568 *78-82, 2015 WL 3609315 (E.D. Cal.) (denying summary judgment and finding basis for special relationship supporting a duty, where civilian locksmith changing lock on property was shot and killed by tenant during eviction, as deputies created a peril by proceeding with eviction while the locksmith was present); *Wallace* 12 Cal. App. 4th at 1397-98 (finding that police officer created peril supporting special relationship where he took statement from homicide witness, which prompted arrest of suspect, and thus created a "zone of danger" for witness that "was not readily discoverable by her", giving rise to a duty to warn "about the peril she was in").

Analogous facts were presented to the Court in *O'Hara v. Western Seven Trees Corp.*, 75 Cal. App. 3d 798, 142 Ca. Rptr. 487 (1997), from which the court determined that a duty existed. There, an apartment tenant was raped, and brought a claim against the landlord for failure to warn of the danger posed by a known assailant. *Id*. at 801. Specifically, before the plaintiff was sexually assaulted, the defendant landlord knew that a male suspect had raped several tenants in the apartment complex. The defendants "were aware of the conditions indicating a likelihood that the rapist would repeat his attacks, and had been supplied by the

local police with composite drawings of the suspect and a general description of his modus operandi." *Id*. Given this knowledge, the landlord was in a unique position to warn of the danger, and created a peril to the tenant in failing to do so:

> [The appellant] fell prey to the same type of criminal conduct which had repeatedly been inflicted upon other tenants by the same assailant, a person whose appearance and modus operandi were known to respondents. . . . [K]nowledge of the suspect's mode of operation and a view of the composite drawings could have been useful to the appellant. If she had known of the danger, she might not have rented an apartment in the complex, or she could have taken precautions based on a knowledge of the suspect's appearance and mode of operation.

*Id*. at 803. The Court reversed the trial court's demurrer of the complaint, holding that the facts alleged were sufficient to establish a duty:

> An analysis of the factors set forth in [*Rowland*] shows that there is potential liability here. The existence of the most important factor, foreseeability, was alleged. Respondents allegedly knew of the past assaults and of conditions making future attacks likely. By not acting affirmatively to protect appellant, they increased the likelihood that she would also be a victim. This failure to act, either by warning appellant or by providing adequate security, allegedly created a risk of injury to appellant.

*Id*. at 804.[4] *Compare Davidson v. City of Westminster*, 32 Cal. 3d 197, 207-08, 185 Cal. Rptr. 252, 649 P.2d 894 (1982) (finding no special relationship between

---

[4] The Court in *O'Hara* further noted that a duty was supported by Restatement Second of Torts §302B, which states that "[a]n act or omission may be negligent if the actor realizes or should realize that it involves an unreasonable risk of harm to

police and victim of stabbing in public laundromat, where police had laundromat under surveillance and watched suspect enter laundromat several times but did not warn victim, as the officers did not create the peril, the victim was unaware of the police surveillance, the victim did not rely on police for protection inside the laundromat, and the police conduct "did not change the risk which would have existed in their absence").

A special relationship may also be based on one's reliance on another to learn of a particular danger. Given the relationship in this case of industry website and aspiring model seeking to market her services, it was reasonable for Plaintiff to expect that the website operator would warn her of a particular and serious known danger to female models marketing services on the website. *See O'Hara*, 75 Cal. App. 3d at 802; *compare Wylie*, 191 Cal. App. 3d at 423-24 (distinguishing *O'Hara* and finding no duty of the landlord to tenant arising where a vicious dog was kept on neighboring property, since the landlord did not create the danger, and the tenant did not rely on the landlord to warn the tenant of danger, particularly given that the landlord "could reasonably expect that appellants would discover the presence of the dog for themselves, and, unfortunately, a vicious dog is a danger

---

another through the conduct of . . . a third person which is intended to cause harm, even though such conduct is criminal." *Id.* at 804. Applying this principle, the Court found that "[r]espondents allegedly knew of conditions making sexual assaults likely. The risk was unreasonable because respondents could have decreased the risk with a simple disclosure of information." *Id.*

one might expect to encounter anywhere in our society"). Here, the danger was posed by known rapists using a particular plan and scheme, and rape could not reasonably have been anticipated and avoided by the victim in the absence of the information possessed by Internet Brands. Jane Doe implicitly relied on Internet Brands to warn her that in using modelmayhem.com to market her modeling services she became a potential target in the rape scheme.

## III. THE COMPLAINT SUFFICIENTLY ALLEGES PROXIMATE CAUSATION

Internet Brands also contends that Plaintiff cannot establish proximate causation. This argument is inappropriate for a motion to dismiss under Fed. R. Civ. P. 12(b)(6) in the present case, as causation raises an issue of fact.

"California applies the 'substantial factor' test of legal causation." *Vickers v. United States*, 228 F.3d 944, 953 (9th Cir. 2000). California's pattern jury instructions define the "substantial factor" test as follows:

> A substantial factor in causing harm is a factor that a reasonable person would consider to have contributed to the harm. It must be more than a remote or trivial factor. It does not have to be the only cause of the harm.
>
> [Conduct is not a substantial factor in causing harm if the same harm would have occurred without that conduct.]

Jud. Council of Cal. Civ. Jury Instr. (CACI) §430 (2015).[5] *Espinosa v. Little Co. of Mary Hosp.*, 31 Cal. App. 4th 1304, 1314, 37 Cal. Rptr. 2d 541 (1995) ("[i]f, as a matter of ordinary experience, a particular act or omission might be expected to produce a particular result, and if that result has in fact followed, the conclusion may be justified that the causal relation exists"). In *Vickers*, the Court stated:

> We begin from the premises that under California law, the basic causation related issues involve questions of fact, unless "reasonable [persons] will not dispute the absence of causality."

238 F. 3d at 953 (citation omitted); *accord* *FDIC v. Varrasso*, 2013 U.S. Dist. LEXIS 143448 *14, 2013 WL 5943402 (E.D. Ca. 2013) (denying summary judgment on issue of causation). "It is enough that [the plaintiff] introduces evidence from which reasonable men may conclude that it is more probable that the event was caused by the defendant than that it was not." *Espinosa*, 31 Cal. App. 4th at 1314 (quoting *Osborn v. Irwin Mem. Blood Bank*, 5 Cal. App. 4th 234, 253, 7 Cal. Rptr. 2d 101 (1992)).

Internet Brands asserts that causation is lacking as a matter of law because "Plaintiff's injuries were all caused by tortfeasors not connected to the Defendant in any way." (Defendant's Memorandum, p. 8, lines 21-22). For purposes of causation, Defendant essentially argues that the acts of Flanders and Callum were a

---

[5] This definition of "substantial factor" incorporates both proximate or legal cause and cause-in-fact or "but for" causation. *See* Comm. Note to CACI §430.

superseding cause deflecting any liability from Internet Brands. This ignores the facts alleged in the Complaint demonstrating that the acts of Flanders and Callum in raping a modelmayhem.com member were foreseeable, and that it is the Defendant's particular knowledge of the Flanders and Callum rape scheme that gives rise to its duty. (*See* Complaint ¶¶ 30, 38, 39). Because this duty is premised upon the danger presented by the conduct of third persons, liability for those persons' conduct causing harm to the plaintiff cannot be deflected by the tortfeasors' lack of a particular connection to the defendant:

> It is well settled in the state, however, that an intervening act does not amount to a "superseding cause" relieving the negligent defendant of liability if it was reasonably foreseeable: "[An] actor may be liable if his negligence is a substantial factor in causing an injury, and he is not relieved of liability because of the intervening act of a third person if such act was reasonably foreseeable at the time of his negligent conduct." Moreover, under section 449 of the Restatement of Torts . . . that foreseeability may arise directly from the risk caused by the original act of negligence: "If the likelihood that a third person may act in a particular manner is the hazard or one of the hazards which makes the actor negligent, such an act whether innocent, negligent, intentionally tortious, *or criminal* does not prevent the actor from being liable for harm caused thereby."

*Landeros v. Flood*, 17 Cal. 3d 399, 411, 551 P. 2d 389 (1976) (citations omitted, emphasis original); *accord* *Bullis v. Security Pacific Nat. Bank*, 21 Cal. 3d 801, 812, 582 P. 2d 109 (1978); *Ileto v. Glock*, 349 F. 3d 1191, 1209 (9th Cir. 2003)

(quoting *Landeros*). As made clear in *Landeros* and in its reliance on Restatement Second of Torts §449, causation in the context of a duty to protect from harm by a third person depends on foreseeability:

> As we recently observed with respect to a determination of duty, . . . foreseeability is a question or fact for the jury. The same rule applies when the issue is whether the intervening act of a third person is foreseeable and therefore did not constitute a superseding cause; in such circumstances "the foreseeability of the risk generally frames a question for the trier of fact."

17 Cal. 3d at 411 (citations omitted).

Causation thus does not depend on the nature of the connection between Internet Brands and the rape perpetrators. Defendant nonetheless asks this Court to find as a matter of law that a warning would not have averted the Plaintiff's rape, as "a broad, boiler-plate warning to Internet Brands' users" would not have prevented the harm. Plaintiff does not contend, however, that Internet Brands' duty was to issue a "broad boiler-plate warning", and indeed, such a warning would have been inappropriate under the facts alleged because Internet Brands had *particular* knowledge of a *specific* scheme by two *known* individuals who were targeting modelmayhem.com members. (*See* Complaint ¶ 9). Given these allegations, Internet Brands undoubtedly had information which, if known to its female members, would have allowed them to avoid falling into the trap laid by Flanders and Callum. Its failure to warn by providing its members with such

information regarding the scheme is sufficient for purposes of the "substantial factor" test. Accordingly, lack of causation is not a basis for dismissal of the Complaint.[6]

**Conclusion**

Internet Brands owed a duty to warn Jane Doe in this case, as it created a peril in Jane Doe marketing her modeling services on the modelmayhem.com website, knowing that its website was being used by Flanders and Callum to lure its female modelmayhem.com members into their rape scheme. Proximate cause is sufficiently alleged in the Complaint, as the facts establish that Internet Brands' failure to warn was a substantial factor in causing Jane Doe to be lured into the Flanders and Callum scheme and raped. Accordingly, Internet Brands' Motion to Dismiss should be denied in its entirety.

Dated: October 24, 2016

HERMAN LAW

By: /s/ Arick Fudali
Jeff Herman
Arick Fudali
*Attorneys for Plaintiff*

---

[6] Whether Flanders or Callum entered content on the website itself, otherwise interacted with Jane Doe on the website, or contacted Jane Doe outside the website using information obtained from the website, is irrelevant to the duty to warn and causation, given that the known danger to modelmayhem.com members existed irrespective of the means they used to communicate with their victims. (*See* Complaint ¶¶ 8, 22, 23).

## PROOF OF SERVICE

STATE OF FLORIDA, COUNTY OF PALM BEACH

I am employed in the County of Palm Beach, State of Florida, I am over the age of 18 and not a party to the within action, my business address is 3351 NW Boca Raton Boulevard, Boca Raton, Florida 33431. I served the foregoing document described as:

Plaintiff's Memorandum of Points and Authorities In
Opposition To Defendant's Motion To Dismiss

by mailing said document in a sealed envelope with postage fully prepaid, as follows:

a. ________ Via overnight delivery.

b. __XX____ I placed the envelope for collection and processing for mailing following this business' ordinary practice with which I am readily familiar. On the same day correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service.

c. Date of deposit: __October 24, 2016

d. Place of deposit: _Boca Raton, Florida

e. Addressed as follows:

Wendy Evelyn Giberti (SBN 268933)
wgiberti@igeneralcounsel.com
**iGeneral Counsel, P.C.**
9595 Wilshire Blvd., STE 900
Beverly Hills, CA 90212
Telephone: (310) 300-4082
Facsimile: (310) 300-8401

I declare penalty of perjury under the laws of the State of Florida that the above is true and correct.

Dated: October 24, 2016

/s/ Arick W. Fudali
Arick W. Fudali