Wendy Evelyn Giberti (SBN 268933)
wgiberti@igeneralcounsel.com
**iGeneral Counsel, P.C.**
9595 Wilshire Blvd., STE 900
Beverly Hills, CA 90212
Telephone: (310) 300-4082
Facsimile: (310) 300-8401

Attorneys for Defendant
INTERNET BRANDS, INC.

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JANE DOE No. 14,<br>Plaintiff,<br><br>v.<br><br>INTERNET BRANDS, INC., D/B/A MODELMAYHEM.COM,<br>Defendant. | Case No. 12-CV-3626-JFW-PJWx<br><br>**DEFENDANT INTERNET BRANDS, INC.'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS**<br><br>Date: November 14, 2016<br>Time: 1:30 pm<br>Place: Courtroom No. 16<br>The Honorable John F. Walter |

## MEMORANDUM OF POINTS AND AUTHORITIES IN REPLY

### I. Plaintiff's Reliance on the Seven-Factor *Rowland* Test Is Misplaced, In That It Has No Application in the Duty to Warn Context

The foundational rule of tort jurisprudence is that liability for nonfeasance "is limited to situations in which there is a special relationship that creates a duty to act." *Seo v. All-Makes Overhead Doors*, 97 Cal. App. 4th 1193, 1202 (2d Dist. 2002). "Absent a 'special relationship,' one cannot be held liable for mere nonfeasance, such as not protecting another from a criminal attack by a third

party." *Eric J. v. Betty M.*, 76 Cal. App. 4th 715, 727 (4th Dist. 1999); *see also Roman Catholic Bishop of San Diego v. Superior Court*, 42 Cal. App. 4th 1556, 1564 (4th Dist. 1996). Plaintiff attempts to circumvent this hornbook rule by grafting a duty onto Internet Brands under California Civil Code § 1714. But Section 1714 merely sets forth the general standard of negligence, and does not speak to whether one owes a duty to warn a third party absent a special relationship. *See* Cal. Civ. Code § 1714 (imposing liability for those who fail to exercise "ordinary care or skill"). Nor does the duty analysis turn on the weighing of the seven factor test set forth in *Rowland v. California*, 69 Cal. 2d 108 (1968), as cited in Plaintiff's Opposition (at 9).

Where, as here, the issue is whether the defendant owned plaintiff a duty to protect from harm caused by a third party, "the absence of a special relationship is dispositive and there is no reason to conduct the analysis prescribed in *Rowland* to determine whether a duty nevertheless existed." *Conti v. Watchtower Bible & Tract Soc'y of N.Y.*, 235 Cal. App. 4th 1214, 1228 (1st Dist. 2015). *See Eric J.*, 76 Cal. App. 4th at 729-30 (because the "traditional [*Rowland*] weighing process" has "already been done by courts over the centuries in formulating the 'no duty to aid' rule in the context of liability for nonfeasance, it is not necessary to engage in the weighing process in a particular case"); *Suarez v. Pacific Northstar Mech., Inc.*,180 Cal. App. 4th 430, 438 (1st Dist. 2009).

## II. <u>Plaintiff Fails to Establish a Special Relationship with Internet Brands as a Matter of Law.</u>

The common law recognizes certain special relationships that create an affirmative duty to take action to assist or protect another, none of which are applicable here. Examples of these traditional relationships include, *inter alia*, (i) innkeepers and their guests; (ii) common carriers and their passengers; (iii) school districts and their students; and (iv) psychotherapists and their patients. *Seo*, 97

Cal. App. 4th at 1203; *Rodriguez v. Inglewood Unified School Dist.*, 186 Cal. App. 3d 707, 712-15 (2d Dist. 1986). In these situations, the actor either has control of the third party, or committed itself to the performance of an undertaking for the benefit of another that imposes a duty of reasonable care for the protection of third parties. *See* Restatement (Second) of Torts, § 314, comment a.

Plaintiff does not cite a single case for her theory that a website operator and those that interact on its website are in the type of special relationship necessary to give rise to a duty to warn. The case law in California supports a finding that Internet Brands did not owe Plaintiff a duty to warn about the potential risks associated with the Model Mayhem website.

Specifically, in *Eric J. v. Betty M.*, 76 Cal. App. 4th 715, 717 (4th Dist. 1999), the plaintiff brought suit against the family members of a convicted child molester who sexually abused the plaintiff's minor child after the perpetrator's release from prison. Following his release from prison and after he found a girlfriend with an eight year old boy, the perpetrator's family did not tell the girlfriend about the perpetrator's previous conviction. *Id.* The court ruled that the family members were not liable for failing to warn the girlfriend about the perpetrator's past because the family members were not in a special relationship with the girlfriend, nor were they "acting to facilitate any molestation." *Id.* at 727-29.

Similarly, in *Thompson v. County of Alameda*, 27 Cal.3d 741, 746 (1980), plaintiffs brought suit against the County for the wrongful death of their five year old son at the hands of a juvenile offender. The plaintiffs alleged, among other things, that the County was negligent in failing to advise or warn the plaintiffs, as "parents of young children within the immediate vicinity," of the released juvenile offender's violent propensities. The County knew that the offender had "latent, extremely dangerous and violent propensities regarding young children and that

sexual assaults upon young children and violence connected therewith were a likely result of releasing him back into the community." *Id.* The County further was aware that the offender had "indicated that he would, if released, take the life of a young child residing in the neighborhood." *Id.* Within 24 hours of the offender's release on temporary leave, he murdered plaintiffs' son in the offender's mom's garage. *Id.* The court held that the County was not negligent is failing to warn the decedents' parents. As in the current case, the County "bore no special and continuous relationship with the specific plaintiffs" nor the decedent, such that even though the child was in the category of threatened individuals, he was not "a foreseeable or readily identifiable target of the juvenile offender's threats." *Id.* at 751, 753. The court refused to find the duty to warn where there had been "*nonspecific threats of harm directed at nonspecific victims*." *Id.* at 754 (emphasis in original).

In *Conti v. Watchtower Bible &Tract Society of N.Y., Inc.*, 235 Cal. App. 4th 1214, 1217 (1st Dist. 2015), the plaintiff sued the church and its headquarters for damages for her sexual abuse as a child by another member of the congregation who the church elders knew was a convicted child molester. The plaintiff claimed that the church had a duty to warn the congregation as a whole, or at least her parents, that a fellow member was a child molester. *Id.* at 1224-25. Not only was the church aware of the member's child molestation conviction, but it also was aware of the "high recidivism" associated with sexual abusers. *Id.* at 1225. The Court held that the religious organization did not owe a duty to warn its members that one of the church members had previously molested a child because it was not in a special relationship with either the person whose conduct needs to be controlled or the foreseeable victim of such conduct. *Id.* at 1226-27, 1230-31. *See also Vu v. Singer Co.*, 706 F.2d 1027, 1029 (9th Cir. 1983) (holding that an operator of a Job Corps center owes no duty to warn people residing in the

neighborhood where the center is located of the violent tendencies of job corps members).

In a somewhat different context, at least one federal California court rejected the notion that a telecommunications company owed its customers a duty to warn about the potential for toll fraud (*i.e.* where hackers hijack a phone service and place unauthorized long-distance calls). In *AT&T Corp. v. Community Health Group*, 931 F. Supp. 719, 721 (S.D. Cal. 1995), AT&T brought action against certain customers for failing to pay their long-distance phone bills placed by computer hackers who illegally gained access to the defendants' phone systems. The defendants argued that AT&T's superior equipment and tracking capabilities required it to notify defendants about the toll fraud. The court rejected the "duty to warn" argument, and noted that "the repeated occurrence of remote access fraud does not create a general duty on AT&T's part to warn its customers of the possibility of unauthorized access." *Id.* at 724-24 (internal citations and quotations omitted).

## III. Internet Brands Did Not Create a Foreseeable Risk of Peril to Plaintiff So As to Justify the Imposition of a Duty to Warn

Given the absence of a special relationship dooming Plaintiff's duty to warn claim—and despite alleging only a failure to warn in the complaint—Plaintiff's opposition now claims that Internet Brands created the peril to which Plaintiff fell victim. But the complaint fails to allege any facts that support a plausible claim that Internet Brands supposedly created a foreseeable peril to Plaintiff.

As the case law discussed above demonstrates, a party does not imperil a third-party even where that party knows that a convicted child molester or violent offender would be returning to an environment in which it would be willing and able to re-commit those crimes against future victims. *See, e.g., Eric J.*, 76 Cal.

App. 4th at 717 (family members of child molester did not imperil child of molester's girlfriend by failing to warn girlfriend of perpetrator's prior conviction); *Thompson*, 27 Cal.3d at 746 (County did not create a danger to or need to warn young children within the immediate vicinity of a released juvenile offender who had "latent, extremely dangerous and violent propensities regarding young children and that sexual assaults upon young children and violence connected therewith were a likely result of releasing him back into the community"); *Conti*, 235 Cal. App. 4th at 1217 (church did not imperil its members by failing to warn that one of its members was a convicted child molester).

Plaintiff's case law similarly does not support a finding that Internet Brands created any peril so as to acquire a duty to warn that it otherwise did not have. *Johnson v. State*, 69 Cal.2d 782 (1986), involved a situation in which the state placed the *specific plaintiff* in a position of clearly foreseeable danger by placing a violent and homicidal teen in the plaintiff's foster home despite knowing of his violent tendencies. *Id.* at 784-86. The state "requested" that plaintiff "provide a foster home" to the violent offender, and thus the risk of danger focused precisely on the plaintiff. *See id.* at 784-85.

The Court found a special relationship between a psychotherapist and the foreseeable victims of the therapist's patient in *Tarasoff v. Regents of the Univ. of Calif.*, 17 Cal.3d 425 (1976) that created a duty to warn because the decedent was a known and specifically identifed victim of the patient's threats. *Id.* at 438. There, the therapist's patient "confided his intention to kill" the decedent to the therapist, and the therapist actually "predict[ed] that [its patient] would kill," but failed to warn the known target. *Id.* at 439. *Wylie v. Gresch*, 191 Cal. App. 3d 412 (1st Dist. 1997) actually supports dismissal, as it recognizes that a landlord has no duty to warn a prospective tenant that the next-door neighbors owned a vicious dog that attacked one of plaintiffs' children. *Id.* at 414. This was so despite the fact that the

"landlord-tenant" relationship qualified as a special relationship. *Id.* at 415. Nor did the court find that the landlord created a dangerous situation by virtue of failing to inform the plaintiff about the proximity of a vicious dog. *Id.* at 423. Like criminals on the Internet, "a vicious dog is a danger one might expect to encounter anywhere in society." *Id.* at 424.

Plaintiff also cites *O'Hara v. Western Seven Trees Corp.*, 75 Cal. App. 3d 798 (1977), which does not stand for the proposition that an actor owes a duty to warn of a danger posed by a known assailant, and creates a peril in failing to do so. For one, the case involved a landlord-tenant relationship, which is a recognized special relationship. *See id.* at 803. But more importantly, the defendants' liability was predominantly the result of their alleged misrepresentations, including their "assur[ances]" that the premises were safe and patrolled by professional guards, which defendants knew "were false" and "induced" the plaintiff to rent the apartment. *Id.* at 802. Thus, to interpret *O'Hara* as "involving a simple 'failure to warn' is to read too much into it, and to leave too much out." *Wylie*, 191 Cal. App. 3d at 419 n. 7.

Plaintiff's reliance on *Res-Care Inc. v. Roto-Rooter Services Co.*, 2011 WL 3353893 (N.D. Cal. Aug. 3, 2011) is also misplaced, in that the *Res-Care* case was not about nonfeasance, but misfeasance. No duty to warn was at issue; rather, the plumber was found negligent for its own conduct in the installation of a water heater. Specifically, the plumber who was hired to replace a leaking water heater "increased or changed the risk that existed before the water heater replacement," as the plumber did not test the water temperature or inspect the mixing value that was connected to the water heater. *Id.* at *10.

In *Engert v. Stanislaus Cty.*, 2015 WL 3609315 (E.D. Cal. June 8, 2015) the Court looked at the actors' affirmative action—rather than inaction—creating a

foreseeable peril. The plaintiff alleged, among other things, that two police deputies carrying out an eviction were negligent in failing to warn a locksmith on the premises that the tenant was violent and posed a threat to anyone attempting to evict him. *Id.* at *21, *30. The deputies "created a foreseeable peril" by affirmatively indicating to the locksmith that he could approach the premises and begin his work. These "affirmative acts [] brought [the locksmith] into a situation that was more dangerous than the position of relative safety." *Id.* at *13.

Finally, in *SRK Consulting, Inc. v. MMLA Psomas, Inc.*, 2009 WL 2450490 (D. Arizona Aug. 11, 2009), the allegations sufficient to state a claim for purposes of a duty of care arising from a special relationship were contract-based and derived from the parties subcontracting agreement. *Id.* at *4.

## IV. **Plaintiff Cannot Establish Causation As a Matter of Law**

Contrary to the Opposition, the issue of causation is not a *per se* fact question. The question of causation "may be determined as a matter of law when reasonable persons could not dispute the absence of causation." *Desrosiers v. Flight Int'l of Fla., Inc.*, 156 F.3d 952, 956 (9th Cir. 1998). Plaintiff cannot establish causation because Internet Brands did not owe a duty to Plaintiff in the first place. Even if it did, Plaintiff cannot establish that the purported failure to warn the entire universe of Model Mayhem users about the criminal scheme of two individuals that is not connected to any particular target would have prevented the harm that occurred. Plaintiff argues that the criminal acts of Flanders/Callum do not constitute a superseding cause because the likelihood that they would commit a criminal act was foreseeable to Internet Brands. *See* Opp. at 22-23 (*citing Landeros v. Flood*, 17 Cal.3d 399, 411 (1976)). In *Landeros*, though, it was reasonably foreseeable that the defendant physicians' sending of a battered child back to the home of the parents who had beaten her would result in the parents

beating her again. *See id.* The defendants had personally diagnosed the specific plaintiff as a victim of battered child syndrome but then allowed the child to return to the custody of her violent caretakers. Here, there is nothing to suggest that Internet Brands knew of the *specific* risk posed to *Plaintiff* by Flanders/Callum. Even a warning by Internet Brands that two known individuals were carrying out a specific scheme to dupe aspiring models into going to fake modeling auditions wherein they faced the risk of rape would not have prevented the harm. It was impossible to ascertain who would be the next possible target of this scheme so as to create a situation where a warning would be effective. *See Thompson*, 27 Cal.3d at 755 (warnings given to a "broad segment" of individuals "would do little as a practical matter to stimulate increased safety measures"); *cf. Tarasoff*, 17 Cal.3d at 339-40 (requiring a warning of danger where the potential victim was specifically known and identified).

## V. <u>Conclusion</u>

Plaintiff admits she did not meet her assailants on or through Defendant's website (FN 6, Opposition), yet she attempts to hold Defendant liable for the actions of her assailants. California law requires a 'special relationship' between the parties in order to state a claim for negligent failure to warn. Absent such a relationship, Defendant does not owe Plaintiff a common law duty to warn. Internet Brands did not cause Plaintiff's injuries and cannot be held liable for any damages she may have suffered. There are no facts that Plaintiff could allege that would give rise to a duty to warn/special relationship and leave to amend would be futile.

DATED: October 31, 2016

*/s/Wendy E. Giberti*

Wendy Evelyn Giberti

## PROOF OF SERVICE

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

At the time of service, I was over 18 years of age and **not a party to this action.** I am employed in the County of Los Angeles, State of California. My business address is 9595 Wilshire Blvd., STE 900, Beverly Hills, CA 90212.

On October 31, 2016, 1 served true copies of the following document described as **DEFENDANT'S MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** on the interested parties in this action as follows:

Kevin M. McGuire, Esq.
The McGuire Law Firm
43460 Ridge Park Drive, STE 200
Temecula, CA 92590

Arick W. Fudali
Jeffrey M. Herman
Herman, Mermelstein & Horowitz, PA
18205 Biscayne Blvd., STE 2218
Miami, FL 33160

**BY CM/ECF NOTICE OF ELECTRONIC FILING:** I electronically filed the document(s) with the Clerk of the Court by using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system. Participants in the case who are not registered CM/ECF users will be served by mail or by other means permitted by the court rules.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on October 31, 2016, at Beverly Hills, California.

*/s/Wendy E. Giberti*

Wendy Evelyn Giberti