UNITED STATES DISTRICT COURT                           JS-6
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES -- GENERAL

Case No.     **CV 12-3626-JFW (PJWx)**                                Date:  November 14, 2016

Title:     Jane Doe No. 14 -*v*- Internet Brands, Inc., D/B/A Modelmayhem.com

**PRESENT:**

**HONORABLE JOHN F. WALTER, UNITED STATES DISTRICT JUDGE**

| Shannon Reilly | None Present |
|---|---|
| Courtroom Deputy | Court Reporter |

**ATTORNEYS PRESENT FOR PLAINTIFFS:**          **ATTORNEYS PRESENT FOR DEFENDANTS:**
           None                                                                              None

**PROCEEDINGS (IN CHAMBERS):**     ORDER GRANTING DEFENDANT INTERNET BRANDS, INC.'S MOTION TO DISMISS
[filed 10/17/2016; Docket No. 46]

On October 17, 2016, Defendant Internet Brands, Inc. ("Defendant" or "Internet Brands") filed a Motion to Dismiss.  On October 24, 2016, Plaintiff Jane Doe No. 14 ("Plaintiff" or "Jane Doe") filed her Opposition.  On October 31, 2016, Defendant filed a Reply.  Pursuant to Rule 78 of the Federal Rules of Civil Procedure and Local Rule 7-15, the Court found the matter appropriate for submission on the papers without oral argument.  The matter was, therefore, removed from the Court's November 14, 2016 hearing calendar and the parties were given advance notice.  After considering the moving, opposing, and reply papers, and the arguments therein, the Court rules as follows:

**I.     FACTUAL AND PROCEDURAL BACKGROUND[1]**

Plaintiff alleges that Internet Brands owns and operates the website modelmayhem.com, which it purchased in 2008.  Model Mayhem is a networking site for professional and aspiring models to market their services.  It has over 600,000 members. Plaintiff Jane Doe was an aspiring model who became a member of Model Mayhem.

Unbeknownst to Jane Doe, two persons, Lavont Flanders and Emerson Callum, were using Model Mayhem to identify targets for a rape scheme, allegedly as early as 2006.  Flanders and Callum are not alleged to have posted their own profiles on the website.  Instead, they browsed

---

[1]The Ninth Circuit extensively summarized the allegations of Plaintiff's Complaint in its opinion filed on May 31, 2016 (*Doe v. Internet Brands, Inc.*, 824 F. 3d 846, 848-49 (9th Cir. 2016)), and the Court has in large part adopted that summary.

profiles on Model Mayhem posted by models, contacted potential victims using fake identities, posed as talent scouts, and lured the victims to south Florida for phony modeling auditions. Once a victim arrived, Flanders and Callum used a date rape drug to put the victim in a semi-catatonic state, raped her, and recorded the rape on videotape for sale and distribution as pornography.

      In 2008, Internet Brands purchased Model Mayhem from Donald and Taylor Waitts (the "Waitts"), the original developers of the site. Shortly after the purchase, Internet Brands learned that Flanders and Callum were using the website to perpetrate their rape scheme. Although Plaintiff does not allege the precise details of how Internet Brands obtained that information, she alleges that the company "as early as August, 2010, knew that two individuals, Lavont Flanders and Emerson Callum, had been criminally charged in this scheme, and further knew from the criminal charges, the particular details of the scheme, including how MODELMAYHEM.COM had been used in the scheme and its members victimized." Specifically, Plaintiff alleges that Internet Brands knew that:

    a. Lavont Flanders and Emerson Callum would contact female MODELMAYHEM.COM members, using fake identities, disguised as talent scouts.

    b. Lavont Flanders and Emerson Callum would lure female MODELMAYHEM.COM members to South Florida to participate in fake auditions for a fraudulent modeling contract opportunity.

    c. Lavont Flanders and Emerson Callum would drug the female MODELMAYHEM.COM members with a date-rape drug during the fake audition.

    d. Emerson Callum would then rape the unknowingly drugged women.

    e. Lavont Flanders and Emerson Callum would record the rape on video camera.

    f. Lavont Flanders and Emerson Callum would produce the rape videos and distribute the video on the internet, guised as consensual hardcore pornography.

Complaint at ¶ 9.  Plaintiff also alleges that Internet Brands sued the Waitts in August 2010 for failing to disclose the potential for civil suits arising from the criminal activities of Flanders and Callum.

      Plaintiff's allegations suggest that Internet Brands obtained the information from an outside source, not from its monitoring of postings on the Model Mayhem website. As noted above, Flanders and Callum did not post on the website.

      In February 2011, several months after Internet Brands had discovered the criminal activity, Flanders, pretending to be a talent scout and using a false identity, contacted Jane Doe "through" the Model Mayhem website and lured her to south Florida for a fake audition. There, Flanders and Callum drugged her, raped her, and recorded the rape.

      Jane Doe filed this diversity action against Internet Brands in this Court, alleging one claim for relief for negligent failure to warn under California law. She alleges that Internet Brands knew

about the criminal activities of Flanders and Callum but failed to warn Model Mayhem users that they were at risk of being victimized. She further alleges that this failure to warn caused her to become a victim of the rape scheme.

On July 3, 2012, Internet Brands filed a motion to dismiss the action under Federal Rule of Civil Procedure 12(b)(6), on the ground that her claim was barred by the Communications Decency Act ("CDA"), 47 U.S.C. § 230(c)(2012). The Court granted the motion to dismiss and dismissed the action with prejudice on August 16, 2012. Jane Doe appealed that Order to the Ninth Circuit.

After lengthy appellate proceedings, the Ninth Circuit reversed, concluding that the CDA did not bar Jane Doe's failure to warn claim. *Doe v. Internet Brands, Inc.*, 824 F. 3d 846, 849-54 (9th Cir. 2016). The Ninth Circuit, however, "express[ed] no opinion on the viability of the failure to warn allegations on the merits," stating, "[a]lthough we assume that Internet Brands may contest the scope of the duty to warn under California law and in particular, the existence of the required special relationship, that issue is not before us." *Id.* at 850, 854.

After remand to this Court, Internet Brands has again moved to dismiss this action, this time on the grounds that it had no duty to warn Jane Doe under California law.[2]

## II. LEGAL STANDARD

A motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims asserted in the complaint. "A Rule 12(b)(6) dismissal is proper only where there is either a 'lack of a cognizable legal theory' or 'the absence of sufficient facts alleged under a cognizable legal theory.'" *Summit Technology, Inc. v. High-Line Medical Instruments Co., Inc.*, 922 F. Supp. 299, 304 (C.D. Cal. 1996) (quoting *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1988)). However, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations and alterations omitted). "[F]actual allegations must be enough to raise a right to relief above the speculative level." *Id.*

In deciding a motion to dismiss, a court must accept as true the allegations of the complaint and must construe those allegations in the light most favorable to the nonmoving party. *See, e.g., Wyler Summit Partnership v. Turner Broadcasting System, Inc.*, 135 F.3d 658, 661 (9th Cir. 1998). "However, a court need not accept as true unreasonable inferences, unwarranted deductions of fact, or conclusory legal allegations cast in the form of factual allegations." *Summit Technology*, 922 F. Supp. at 304 (citing *Western Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981) *cert. denied*, 454 U.S. 1031 (1981)).

---

[2]Internet Brands' characterization of this lawsuit as Plaintiff's "desire to find a corporation to pay financially for the alleged criminal and violent misconduct of two men unaffiliated with the corporation" is wholly inappropriate and exceeds the bounds of legitimate advocacy. *See* Motion at 2. It demonstrates a total lack of compassion for the terrible crime perpetrated on Plaintiff and resulting damages suffered by an innocent, unsuspecting victim.

Where a motion to dismiss is granted, a district court must decide whether to grant leave to amend.  Generally, the Ninth Circuit has a liberal policy favoring amendments and, thus, leave to amend should be freely granted.  *See, e.g., DeSoto v. Yellow Freight System, Inc.*, 957 F.2d 655, 658 (9th Cir. 1992).  However, a Court does not need to grant leave to amend in cases where the Court determines that permitting a plaintiff to amend would be an exercise in futility.  *See, e.g., Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729, 738 (9th Cir. 1987) ("Denial of leave to amend is not an abuse of discretion where the pleadings before the court demonstrate that further amendment would be futile.").

## III.   DISCUSSION

In order to state a claim for negligence under California law, a plaintiff must allege facts demonstrating: (1) a legal duty to use due care; (2) a breach of that duty; (3) proximate or legal cause; and (4) resulting injury  *Ladd v. Cty. of San Mateo*, 12 Cal. 4th 913, 917–18 (1996).  Internet Brands moves to dismiss Jane Doe's negligence claim on the grounds that it did not have a legal duty to warn Jane Doe and other Model Mayhem users that they were at risk of being victimized by the rape scheme.

The existence of a "duty" is a question of law.  *Thompson v. County of Alameda*, 27 Cal.3d 741, 750 (1980).  "[L]egal duties are not discoverable facts of nature, but merely conclusory expressions that, in cases of a particular type, liability should be imposed for damage done."  *Tarasoff v. Regents of Univ. of California*, 17 Cal.3d 425, 434 (1976).  In other words, "[a] determination that a duty exists amounts to a policy decision that a particular plaintiff should be protected."  *Smith v. Freund*, 192 Cal. App. 4th 466, 472 (2011) (citation omitted).  Policy considerations involved in determining whether a defendant owes the plaintiff a duty to use reasonable care include (1) the foreseeability of harm to the plaintiff, (2) the degree of certainty that the plaintiff suffered injury, (3) the closeness of connection between the defendant's conduct and the injury suffered, (4) the moral blame attached to the defendant's conduct, (5) the policy of preventing future harm, (6) the extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach, and (7) the availability, cost, and prevalence of insurance for the risk involved.  *Rowland v. Christian*, 69 Cal.2d 108, 113 (1968).

In determining whether a defendant owes a duty to a plaintiff in a particular case, courts generally distinguish between misfeasance and nonfeasance.  *See, e.g., Seo v. All-Makes Overhead Doors*, 97 Cal. App. 4th 1193, 1202 (2002). "Misfeasance exists when the defendant is responsible for making the plaintiff's position worse, i.e., defendant has created a risk. Conversely, nonfeasance is found when the defendant has failed to aid plaintiff through beneficial intervention." *Weirum v. RKO Gen., Inc.*, 15 Cal. 3d 40, 49 (1975).  In cases of misfeasance, the question of duty is governed by the standards of ordinary care, i.e. "a person ordinarily is obligated to exercise due care in his or her own actions so as not to create an unreasonable risk of injury to others, and this legal duty generally is owed to the class of persons who it is reasonably foreseeable may be injured as the result of the actor's conduct." *Lugtu v. California Highway Patrol*, 26 Cal. 4th 703, 716 (2001).  *See also* Cal. Civ. Code § 1714 ("Everyone is responsible, not only for the result of his or her willful acts, but also for an injury occasioned to another by his or her want of ordinary care or skill in the management of his or her property or person, except so far as the latter has, willfully or by want of ordinary care, brought the injury upon himself or herself.").

In contrast, in cases of nonfeasance, "[a]s a general rule, one owes no duty to control the conduct of another, nor to warn those endangered by such conduct." *Tarasoff v. Regents of Univ. of California*, 17 Cal. 3d 425, 435 (1976) (internal citations omitted). "[T]he courts have carved out an exception to this rule in cases in which the defendant stands in some special relationship to either the person whose conduct needs to be controlled or in a relationship to the foreseeable victim of that conduct." *Id.* "[A] duty of care may arise from either (a) a special relation between the actor and the third person which imposes a duty upon the actor to control the third person's conduct, or (b) a special relation between the actor and the other which gives to the other a right of protection." *Id.* "Resolution of the issue whether a special relationship exists giving rise to a duty to protect (or warn) comprehends consideration of the same factors underlying any duty of care analysis." *Hansra v. Superior Court*, 7 Cal. App. 4th 630, 646 (1992). "In other words, to say that a "special relationship" exists is to say nothing other than the factors favoring imposition of a duty of care in particular circumstances outweigh the countervailing factors (one of which is that the harm was caused by a third person)." *Id.*

"Special relationships" that courts have found to trigger a duty to protect another from foreseeable injury caused by a third party include, for example, those between: (1) business proprietors, such as shopping centers, restaurants and bars, and their tenants, patrons, or invitees; (2) common carriers and passengers; (3) innkeepers and their guests; and (4) mental health professionals and their patients. *See Delgado v. Trax Bar & Grill*, 36 Cal. 4th 224, 235, 236 n.14 (2005). "The special relationship situations generally involve some kind of dependency or reliance." *Olson v. Children's Home Soc'y*, 204 Cal. App. 3d 1362, 1366 (1988).

This case involves nonfeasance rather than misfeasance. Indeed, in her Complaint, Plaintiff does not allege that Internet Brands' actions somehow *created* the risk faced by its members or made Jane Doe's position, by its actions, *worse*. Rather, she alleges that Internet Brands failed to warn modelmayhem.com users of the danger presented by the criminal acts of a third party. *See* Complaint at ¶¶ 22-39. Although Jane Doe argues in her Opposition that Internet Brands "created" the peril or risk, there is no support for that theory. Contrary to Plaintiff's argument, merely allowing members to continue using the Model Mayhem website without warning them of the rape scheme does not, by itself, constitute the creation of the risk or peril. *See, e.g., Conti v. Watchtower Bible & Tract Society of New York, Inc.*, 235 Cal. App. 4th 1214 (2015) (treating church's failure to warn its congregation that one of its members was a convicted child molester as one of nonfeasance). Accordingly, unless a "special relationship" existed between Internet Brands and Jane Doe, or between Internet Brands and Flanders or Callum, Internet Brands had no duty to warn.

Not surprisingly, Plaintiff does not argue that Internet Brands had a special relationship with Flanders or Callum. Indeed, the Court easily concludes that Internet Brands did not have a special relationship with Flanders or Callum, especially given that Flanders and Callum did not post their own profiles to the Model Mayhem website and used fake identities to lure their potential victims. The more difficult question is whether Internet Brands had a "special relationship" with Jane Doe, who along with at least 600,000 others, were members of the Model Mayhem website. The relationship between Jane Doe and Internet Brands, a website operator, does not fall under any of the well-recognized "special relationships" under California law, and the Court has not found, nor have the parties cited, any case in which courts have found the existence of a "special relationship" or imposed a duty under similar or analogous circumstances.

Based on the existing case law and application of the *Rowland* factors, the Court concludes that Internet Brands did not have a "special relationship" with Jane Doe and thus did not have a duty to warn her that she was at risk of being victimized by the rape scheme. In a case with the most analogous facts, *Conti v. Watchtower Bible & Tract Society of New York, Inc.*, the California Court of Appeal found that there was no "special relationship" or duty. In that case, the court considered whether a religious organization owed a duty to inform its congregation that a fellow member was a child molester. Although the religious organization was aware of the member's child molestation conviction as well as the "high recidivism" associated with child molestation, the court concluded that no "special relationship" existed and the religious organization had no duty to warn the congregation.[3]

While Jane Doe's injuries are no doubt severe, the Court concludes that there is no exceptional reason to depart from the general common law rule that "one owes no duty to control the conduct of another, nor to warn those endangered by such conduct." *See Tarasoff,* 17 Cal. 3d at 435. Although the Court is appalled by the tragic events in this case, the Court concludes that the policy considerations identified in *Rowland v. Christian*, 69 Cal.2d 108, 113 (1968) do not support finding a duty in this case. Although it may have been foreseeable that Flanders and Callum would strike again, Internet Brands only had knowledge of a threat to its member base at large, not to any specific member. Imposing a duty to warn under these circumstances would, in the Court's opinion, only minimally increase the precautions already taken by website users, and would also likely cause website operators to inundate and overwhelm their users with warnings, ultimately diluting the effectiveness of such warnings. *Cf. Thompson v. County of Alameda*, 27 Cal.3d 741, 755 (1980) ("In our view, the generalized warnings sought to be required here would do little to increase the precautions of any particular members of the public who already may have become conditioned to locking their doors, avoiding dark and deserted streets, instructing their children to beware of strangers and taking other precautions. By their very numbers the force of

---

[3]In the most analogous case relied on by Plaintiff, *O'Hara v. Western Seven Trees Corp.* 75 Cal. App. 3d 798 (1977), a tenant who was raped in her apartment sued her landlord on theories of negligence and deceit. The landlord knew of prior rapes at the apartment complex, was aware of the conditions indicating a likelihood that the rapist would repeat the attacks, and had been provided with composite drawings of the suspect and a general description of his modus operandi by the local police. The landlord not only failed to advise the plaintiff of the crimes, but assured her, as a prospective tenant, that the premises were safe and were patrolled at all times by professional guards. The California Court of Appeal found that the landlord had a duty to warn Plaintiff, stating "respondents' liability for failure to warn is not founded upon their control over the common areas but upon their position of superior knowledge and upon their alleged misrepresentations." 75 Cal. App. 3d at 803. The Court finds this case distinguishable for a number of reasons, including that the landlord's liability was founded in part on alleged misrepresentations, and that it involved the landlord-tenant relationship, which is a recognized special relationship under California law. *See Wylie v. Gresch*, 191 Cal. App. 3d 412, 419 n.7 (1987) ("For that decision to be read as one involving a simple 'failure to warn' is to read too much into it, and to leave too much out. The crucial fact there was the misrepresentation coupled with the failure to warn of a specific set of similar crimes which had been perpetrated over a period of time and which were alleged to involve access through a common area over which the landlords maintained control.").

the multiple warnings required to accompany the release of all probationers with a potential for violence would be diluted as to each member of the public who by such release thereby becomes a potential victim."). Moreover, as argued by Internet Brands and amicus curiae in the Ninth Circuit, imposing a duty in this case would likely have a "chilling effect" on the internet by opening the floodgates of litigation.

For the foregoing reasons, the Court concludes that Internet Brands had no duty to warn Jane Doe or Model Mayhem users that they were at risk of being victimized by the rape scheme. Accordingly, the Court concludes that Jane Doe fails to state a claim for negligence under California law.

## IV. CONCLUSION

Internet Brands' Motion to Dismiss is **GRANTED**. Although the Court recognizes that this Circuit has a liberal policy favoring amendments and that leave to amend should be freely granted, the Court is not required to grant leave to amend if the Court determines that permitting Plaintiff to amend would be an exercise in futility. *See, e.g., Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729, 738 (9th Cir. 1987) ("Denial of leave to amend is not an abuse of discretion where the pleadings before the court demonstrate that further amendment would be futile."). "Leave to amend may be denied if a court determines that allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Abagninin v. AMVAC Chemical Corp.*, 545 F.3d 733, 742 (9th Cir. 2008) (quotations and citations omitted). In this case, Plaintiff has failed to provide the Court with any facts or argument that indicate leave to amend would not be futile. *See Deutsch v. Turner Corp.*, 324 F.3d 692, 717-718 (9th Cir. 2003) (upholding denial of leave to amend on the basis of futility where the plaintiffs proffered facts to the district court that were insufficient to support tolling and failed to offer additional facts on appeal). Accordingly, the Court denies Plaintiff leave to amend her Complaint.

IT IS SO ORDERED.